IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| HAROLD W. CRISWELL AND § <br> MARY EVELYN CRISWELL, § <br> § <br> Plaintiff, § <br> § <br> v. § <br> § <br> DEUTSCHE BANK NATIONAL TRUST § <br> COMPANY, AS TRUSTEE FOR FFMLT § <br> TRUST 2005-FF2, MORTGAGE PASS § <br> THROUGH CERTIFICATES, SERIES § <br> 2005-FF2; SPECIALIZED LOAN § <br> SERVICING LLC; AND BANK § <br> OF AMERICA, § <br> § <br> Defendants. § | Case No. 4:16CV463-KPJ |

## MEMORANDUM OPINION AND ORDER

Now before the Court is Defendants Deutsche Bank National Trust Company, as Trustee for FFMLT Trust 2005-FF2, Mortgage Pass-Through Certificates, Series 2005-FF2 ( "Deutsche Bank") and Specialized Loan Servicing LLC's ("SLS") (collectively, the "Deutsche Defendants") Motion for Summary Judgment (the "Motion") (Dkt. 53), filed on August 31, 2017. Plaintiffs Harold W. Criswell and Mary Evelyn Criswell ("Plaintiffs") filed a response (Dkt. 56), and the Deutsche Defendants filed a reply (Dkt. 58). As set forth below, the Court finds the Motion (Dkt. 53) is **GRANTED**, and Plaintiffs should take nothing by their claims against Defendant Deutsche Bank and Defendant SLS.

### I. BACKGROUND

Plaintiffs apparently filed this lawsuit in response to the initiation of foreclosure proceedings against the real property located at 1905 Dublin Road, Plano, Texas 75094 (the "Property"). Plaintiffs' Second Amended Complaint (the "Complaint") (Dkt. 26) is the operative

complaint herein. On September 27, 2004, Plaintiff Harold Criswell executed a Texas home equity note (the "Note") in favor of First Franklin Financial Corporation ("First Franklin"). *See* Dkt. 26 at ¶ 10. As security for the Note, Plaintiffs executed a Texas home equity security instrument (the "Security Instrument"). *Id*. at ¶ 11. The "Note" and the "Security Instrument" are collectively referred to herein as the "Loan."

In March 2014, Defendant Bank of America, N.A. ("BANA"),[1] then the loan's servicer, approved Plaintiffs for a trial modification of the original loan. *Id*. at 13. The trial modification required Plaintiffs to make three payments under a Trial Period Plan ("TPP"). *Id*. at ¶ 13, 15-26; *see also* Dkt. 56-3. Plaintiffs allege they successfully made the trial payments as required under the TPP, but were not subsequently provided a copy of the executed loan modification agreement. Dkt. 26 at ¶ 15. On or about April 1, 2014 (during the Trial Period), Defendant BANA transferred the servicing of the Loan to Defendant SLS. *Id*. at ¶ 17. According to Plaintiffs, SLS continued to accept payments in the modified amount "for a period of time," but also failed to provide Plaintiffs with "fully executed permanent documents for a Modified Loan." *Id*. at ¶ 16.

On October 20, 2014, First Franklin assigned the Deed of Trust to Defendant Deutsche Bank, and Deutsche Bank asserts that the Deed was recorded in the real property records of Collin County, Texas, on or about August 18, 2015. *See* Dkt. 53 at 8. On or about March 17, 2016, Defendant Deutsche Bank filed a foreclosure proceeding against Plaintiffs. *See* Dkt. 26 at ¶ 25.

Plaintiffs' Complaint asserts two breach of contract claims (Count One and Count Two). Although the Deutsche Defendants assert the Breach of Contract claim identified in Count Two is the sole claim against them (*see* Dkt. 53 at 5), the Court finds that at least some of the Count One allegations also appear to apply to the Deutsche Defendants. *See, e.g.*, Dkt. 26 at ¶ 32 ("Defendant

---

[1] The Court notes that Defendant BANA has also filed a motion for summary judgment (Dkt. 52), which the Court will address in a separate opinion.

[BANA] and its alleged or putative assignees SLS and Deutsche, have failed to abide by the Modification Program. . . ."); ¶ 33 ("Defendant [BANA] and its assignees SLS and Deutsche's breach caused the Plaintiffs injury. . . ."). Thus, it is not accurate to say that only Count Two is applicable to the Deutsche Defendants. However, having compared the allegations in Count One and Count Two, the Court finds them to be substantially similar, if not identical. Plaintiffs' common-law fraud claim (Count Three) appears to be asserted only against Defendant BANA.

## II. LEGAL STANDARD

Summary judgment is appropriate when, viewing the evidence and all justifiable inferences in the light most favorable to the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Hunt v. Cromartie*, 526 U.S. 541, 549 (1999). The appropriate inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

The party moving for summary judgment has the initial burden to prove there are no genuine issues of material fact for trial. *Provident Life & Accident Ins. Co. v. Goel*, 274 F.3d 984, 991 (5th Cir. 2001). In sustaining this burden, the movant must identify those portions of pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The moving party, however, "need not negate the elements of the nonmovant's case." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). The movant's burden is only to point out the absence of evidence supporting the nonmoving party's case. *Stults v. Conoco, Inc.*, 76 F.3d 651, 655 (5th Cir. 1996).

In response, the nonmovant's motion "may not rest upon mere allegations contained in the pleadings, but must set forth and support by summary judgment evidence specific facts showing the existence of a genuine issue for trial." *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Anderson*, 477 U.S. at 255-57). Once the moving party makes a properly supported motion for summary judgment, the nonmoving party must look beyond the pleadings and designate specific facts in the record to show there is a genuine issue for trial. *Stults*, 76 F.3d at 655. The citations to evidence must be specific, as the district court is not required to "scour the record" to determine whether the evidence raises a genuine issue of material fact. E.D. TEX. LOCAL R. CV-56(d). Neither "conclusory allegations" nor "unsubstantiated assertions" will satisfy the nonmovant's burden. *Stults*, 76 F.3d at 655.

### III. **EVIDENCE PRESENTED**

The Deutsche Defendants have submitted the following evidence in support of their Motion:

1) Exhibit A: Declaration of Cynthia Wallace, Second Assistant Vice President of Default Administration for SLS, with attachments:

    a. Exhibit A.1: Copy of the Note, dated September 27, 2004;

    b. Exhibit A.2: Copy of the Texas Home Equity Security Instrument, dated September 27, 2004;

    c. Exhibit A.3: Copy of the letter sent to Plaintiff Harold Criswell, dated April 15, 2014;

    d. Exhibit A.4: Copy of the letter sent to Plaintiff Harold Criswell, dated May 1, 2014.

    e. Exhibit A.5: Copy of the letter sent to Plaintiff Harold Criswell, dated September 11, 2014;

    f. Exhibit A.6: Copy of the letter sent to Plaintiff Harold Criswell, dated December 4, 2014;

    g. Exhibit A.7: Copy of the letter sent to Plaintiff Harold Criswell, dated December 7, 2014;

    h. Exhibit A.8: Copy of the Corrective Assignment, dated July 24, 2015.

2) Exhibit B: Copy of the letter sent to Plaintiff Harold Criswell, dated March 12, 2014;

3) Exhibit C: Copy of the Texas Department of Savings and Mortgage Lending Complaint Form, dated January 7, 2016;

4) Exhibit D: Copy of the letter sent to Plaintiff Harold Criswell, dated March 12, 2014;

5) Exhibit E: Excerpts from the Transcript of the Oral Deposition of Harold Criswell taken on August 17, 2017("H. Criswell Depo."), with exhibits:

6) Exhibit E: A copy of the hazard insurance expiration letter sent to Plaintiff Harold Criswell by Defendant SLS, dated April 15, 2014; and

7) Exhibit F: Excerpts from the Transcript of the Oral Deposition of Mary Evelyn Criswell taken on August 17, 2017 ("M. Criswell Depo."), with exhibits.

*See* Dkts. 53-1-1-53-19.

Plaintiffs have submitted the followed evidence in opposition to the Motion:

1) Exhibit A: Letter from Plaintiffs to BANA, dated February 29, 2012, regarding Plaintiffs' right to defer payment of their property taxes;

2) Exhibit B: Letter from BANA dated March 11, 2014, notifying Plaintiffs that the servicing of the Loan would be transferred to Defendant SLS effective April 1, 2014;

3) Exhibit C: Trial loan modification offer letter from BANA, dated March 12, 2014;

4) Exhibit D: Letter from SLS, dated September 11, 2014;

5) Exhibit E: Letter from Farmers Insurance, dated February 26, 2015, canceling the insurance policy on the Property;

6) Exhibit F: Letter from SLS, dated March 2, 2015;

7) Exhibit G: Letter from SLS, dated March 3, 2015;

8) Exhibit H: Statement and insurance policy from Farmers Insurance, dated May 2, 2014;

9) Exhibit I: Affidavit of Harold Criswell;

10) Exhibit J: Copy of Harold Criswell's Experian credit file, which appears to be undated;

11) Exhibit K: Copy of Harold Criswell's AT&T statement for the period September 14, 2014 to October 13, 2014;

12) Exhibit L: Letter from Citi Credit Management Department, dated October 14, 2015;

13) Exhibit M: Copies of checks from Harold W. Criswell & Associates to BANA and SLS, along with correspondence regarding same; and

14) Exhibit N: Notice of Servicing Transfer, dated April 6, 2014.

*See* Dkts. 56-1-5-14.

### IV. <u>ANALYSIS</u>

#### A. BREACH OF CONTRACT CLAIM

Plaintiffs allege "[they] had a valid, enforceable contract [with Defendant SLS], being that Modification Program affecting the Note and Security Instrument on the Plaintiffs' Property Plaintiff." Dkt. 26 at ¶ 36. Plaintiffs further allege "Defendant SLS, has failed to abide by the Modification Program by not providing Plaintiffs with fully executed permanent documents for the Modified Loan and not honoring all terms of Plaintiffs' Modified Loan and Modification Program requirements as Defendant SLS promised to do when notifying Plaintiffs that they, Defendant SLS, would now be servicing Plaintiffs' Modified Loan." *Id*. The Deutsche Defendants argue that Plaintiffs' breach of contract claim fails because: (1) no contract existed between Plaintiffs and the Deutsche Defendants; (2) Plaintiffs did not make payments in accordance with the Modification Letter; and (3) SLS sent Plaintiffs a loan modification agreement, which Plaintiffs admit they ignored.

"To recover for breach of contract, one must show: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of contract by the defendant; and (4) damages to the plaintiff as a result of the breach." *Steele v. Green Tree Servicing, LLC*, 2010 WL 3565415, at *4 (N.D. Tex. 2010) (citations omitted); *see Hackberry Creek County Club,*

*Inc. v. Hackberry Creek Home Owners Ass'n*, 205 S.W.3d 46, 55 (Tex. App.—Dallas 2006, pet. denied).

### 1. **The BANA Trial Modification Offer**

The Court finds nothing to substantiate the existence of a contract between Plaintiffs and the Deutsche Defendants. In order for a contract to be valid and enforceable, it must be supported by consideration. *Smith Intern., Inc. v. Egle Group LLC*, 490 F.3d 380, 387 (5th Cir. 2007). The same principle applies to contractual modifications; in order to be enforceable, a loan modification must be supported by new consideration. *Rackley v. JPMorgan Chase Bank, N.A.*, 2011 WL 2971357, at *4 (W.D.Tex. 2011). "Under Texas law's 'pre-existing duty rule,' an agreement to do what one is already bound to do generally cannot serve as sufficient consideration to support a contract modification." *Id*.

To the extent Plaintiffs rely on the Trial Modification Letter from Defendant BANA, and any payments made thereunder, to support the existence of a contract, their efforts are unavailing. The Letter is not a final contract, and any payments Plaintiffs made pursuant to the TPP do not constitute valid consideration under Texas law. In *Rackley*, the district court dismissed a borrower's breach of contract claim finding that the TPP was not an enforceable contract requiring a permanent loan modification because it was a modification of the original loan agreement and was unsupported by new consideration. *Rackley*, 2011 WL 2971357, at *3–4. The borrower making three TPP payments and submitting financial information was not new consideration because the borrower was already contractually obligated to make payments and provide financial information under the deed of trust. *Id*. at *2–3.

Numerous courts in Texas, including those in this district, have similarly concluded that a breach of contract claim cannot arise from a TPP because the TPP requires certain events to occur

7

prior to the modification and makes the modification dependent upon the discretion of the mortgagee. *See Miller v. Fed. Home Loan Mortg. Corp.*, No. 4:12CV746, 2013 WL 6172542, at *2 (E.D. Tex. Nov. 22, 2013) (borrower-plaintiff could not rely upon trial payment plan to create a binding contractual obligation to enter into a permanent loan modification where borrower-plaintiff failed to show new consideration); *Burr v. JPMorgan Chase Bank*, 2012 WL 1059043, at *4 (S.D. Tex. 2012); *Karapetyan v. JPMorgan Chase Bank, N.A.*, 2012 WL 3308883, at *3 (E.D. Tex. June 6, 2012), *report and recommendation adopted*, 2012 WL 3307448 (E.D. Tex. Aug. 12, 2012) (three payments made pursuant to trial period plan were not new consideration under Texas law); *Pennington v. HSBC Bank USA N.A.*, 2011 WL 6739609, at *1 (W.D. Tex. 2011), *aff'd sub nom. Pennington v. HSBC Bank USA, N.A.*, 493 F. App'x 548 (5th Cir. 2012) (collecting cases holding same).

Plaintiffs fail to cite Texas law supporting their argument that new consideration existed for the TPP. Thus, Plaintiffs cannot rely upon the TPP to create a binding contractual obligation to enter into a permanent loan modification. Therefore, the TPP is not a valid, enforceable contract, and neither BANA nor the Deutsche Defendants entered into an agreement with Plaintiffs. Thus, Plaintiffs' breach of contract claim fails as a matter of law.

### 2. **Plaintiffs' Failure to Comply with the BANA Trial Modification Offer**

The Deutsche Defendants also argue that Plaintiffs' breach of contract claim fails because Plaintiffs admit they did not make payments as required by the TPP. *See* Dkt. 53 at 15. Notably, Plaintiffs have not alleged any facts to show they were current on their mortgage payments such that foreclosure would be a breach of the parties' agreement. *See, e.g., Water Dynamics, Ltd. v. HSBC Bank USA, Nat. Ass'n*, 2013 WL 363118, 1 (5th Cir. 2013) ("a party in default cannot assert a claim for breach against the other party").

The Trial Modification Letter requires Plaintiffs "to continue [making] payments in the amount noted in [their] Trial Period Plan until [they] receive [their] fully executed permanent modification documents from [BANA]." Dkt. 53-10 at 3. Thus, Plaintiffs' eligibility for a permanent modification was contingent upon timely payment of the TPP payment of $1,984.73, "until [they] receive[d] [their] fully executed permanent modification documents from [BANA]." The Letter warned Plaintiffs that "[BANA] must receive each payment on time and in the month in which it is due. . . . **If you miss a payment or do not comply, this offer will end and your loan will not be modified.**" *Id.* (emphasis in original).

Despite the clear instruction to continue paying $1,984.73 "until [they] received fully executed permanent modification documents" (*id.*), Plaintiffs admit that beginning with the July 1, 2014, payment they "began paying $1,316.65 for Modified Loan payments" (Dkt. 26 at ¶ 22). *See also* Dkt. 53-13, H. Criswell Depo. at 78:13-86:12; 89:9-90:18. Therefore, Plaintiffs' allegation that Defendant BANA failed to provide a copy of the executed loan modification agreement is not supported by the record. Rather, Plaintiffs were ineligible for a permanent loan modification because they failed to comply with the terms of the TPP.

### 3. Plaintiffs' Failure to Comply with the SLS Trial Modification Offer

The Deutsche Defendants further argue that despite Plaintiffs' failure to comply with the terms of the TPP offered by BANA, and even though they had no obligation to do so, the Deutsche Defendants provided Plaintiffs with another opportunity to receive a permanent modification agreement. *See* Dkt. 53 at 15. On September 11, 2014, Defendant SLS sent Plaintiff Harold Criswell a "Modification Letter" (*see* Dkt. 53-6 at 9), approving Plaintiffs for a loan modification, and enclosing a Loan Modification Agreement (the "Modification Agreement"), which stated that in order to "accept this offer, [Plaintiff] must sign and return both originals of the Modification

9

Agreement to [SLS] in the enclosed, pre-paid envelope by **September 30, 2014**." *See id*. (emphasis in original). Rather than execute and return the Modification Agreement, Plaintiffs simply ignored it. *See* Dkts. 53-6; 53-11 at 9; and 53-13, H. Criswell Depo. at 81:21-82:2.

On December 4, 2014, SLS sent Plaintiff Harold Criswell a letter stating that the Modification Agreement was offered and sent to Plaintiffs for execution, but was ultimately not accepted. *See* Dkts. 53-7 and 53-13; *see also* H. Criswell Depo. at 86:13-88:5. Thus, Plaintiffs' failure to obtain a loan modification was not the fault of the Deutsche Defendants, who, despite having no obligation to do so, sent Plaintiffs a proposed Modification Agreement. No modification arose because Plaintiffs failed to execute the Modification Agreement. The evidence establishes that Plaintiffs deliberately ignored the SLS modification offer. *See* Dkt. 53-13, H. Criswell Depo. at 87:20-23. Because the Deutsche Defendants did not enter an agreement with Plaintiffs, let alone breach any agreement, the Deutsche Defendants are entitled to summary judgment on Plaintiffs' breach of contract claim.

### B. HAZARD INSURANCE AND PROPERTY TAXES

Finally, Plaintiffs claim the Deutsche Defendants cancelled their hazard insurance and refused to recognize Plaintiffs' right to participate in the Texas Deferred Tax Program (*see* Dkt. 26 at ¶ 40). It not clear whether these allegations are intended to be part of Plaintiffs' breach of contract claim, since they do not specify to what contract these allegations are in reference. Furthermore, as explained above, Plaintiffs have failed to establish the existence of any contract with the Deutsche Defendants beyond the terms of the Note and Security Instrument. Not only are Plaintiffs' vague statements about the cancelling of their hazard insurance insufficient to form the basis of a cognizable breach of contract claim, Plaintiffs' claims are also not supported by the evidence.

The Security Instrument provides that "[i]f Borrower fails to maintain any of the coverages described above [including hazard insurance], Lender may obtain insurance coverage, at Lender's option and Borrower's expense." *See* Dkt. 53-3 at ¶ 5. "Lender is under no obligation to purchase any particular type or amount of coverage." *Id*. Thus, pursuant to the Deed of Trust, Defendant SLS was permitted to obtain replacement coverage. A letter sent to Harold Criswell from Farmers Insurance on March 25, 2016, confirms that Plaintiffs' insurance policy was cancelled for non-payment of premium on December 5, 2013. *See* Dkt. 53-12. Because Defendants are entitled under the Deed of Trust to place insurance on the Property (*see* Dkt. 53-3 at 5-6), Plaintiffs' allegations that the Deutsche Defendants' actions related to the hazard insurance on the Property constituted breach of contract are meritless.

Plaintiffs' claims regarding the Deutsche Defendants' alleged refusal to recognize Plaintiffs' right to participate in the Texas Deferred Tax Program are also meritless. Neither the mortgagee (Deutsche Bank) nor the servicer (SLS) are required to recognize tax deferrals. *See Mechali v. CTX Mortgage Co.*, 2011 WL 5006511, at *3 (E.D. Tex. 2011) (citing TEX. TAX CODE § 33.06(d)). Furthermore, while "the taxes are deferred from the standpoint that the County will not collect the taxes, the taxes remain due and a tax lien is placed on the property throughout the deferment." *Mechali*, 2011 WL 5006511, at *3. Thus, unless modified by contract, a tax deferral creates an interest in the property superior to any mortgage. *See id*. at *4 (citing *Lyles v. Deutsche Bank Nat. Trust Co.*, 2011 WL 96591, at *3 (S.D. Tex. 2011)); *see also* TEX. TAX CODE § 32.05(b)(2). Here, the Deed of Trust expressly prohibits subordination of the mortgagee's interests in the Property. *See* Dkt. 53-3 at ¶ 4. The Deutsche Defendants are thus entitled to dismissal of these claims as a matter of law.

## V. CONCLUSION

For the reasons explained, summary judgment is proper on all of Plaintiffs' claims against Defendant Deutsche Bank and Defendant SLS, including Plaintiffs' claim for attorneys' fees and exemplary damages, since Plaintiffs are not the prevailing party in this lawsuit. The Court thus finds that the Deutsche Defendants' Motion for Summary Judgment (Dkt. 53) is **GRANTED**, and Plaintiffs should take nothing by their claims here.

**IT IS SO ORDERED**.

**SIGNED this 30th day of November, 2017.**

_____
KIMBERLY C. PRIEST JOHNSON
UNITED STATES MAGISTRATE JUDGE